## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DANIEL HENRY, individually and on behalf
of himself and all others similarly situated,

               Plaintiff,

        Case No. _____23-cv-16830_____

     v.

ABBVIE INC.

               Defendant.

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441 and 1446, Defendant AbbVie Inc. ("Defendant") removes this action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court for the Northern District of Illinois, Eastern Division. Removal is proper because this Court has jurisdiction under the Class Action Fairness Act ("CAFA"). In support of this Notice of Removal, Defendant states as follows:

**I.    PROCEDURAL HISTORY**

1.    On November 1, 2023, Plaintiff Daniel Henry ("Henry" or "Plaintiff") filed a class action complaint in the Circuit Court of Cook County, No. 2023-CH-09168, individually and on behalf of all others similarly situated, based on alleged violations of the Illinois Genetic Information Privacy Act, 410 ILCS 513 *et seq.* ("GIPA"). AbbVie Inc. ("AbbVie") is the named defendant.

2.    Defendant was served with a copy of the summons and Complaint on November 16, 2023. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders that have been filed and served in the state court action are attached hereto as **Exhibit A**.

3.      This Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date that Defendant was served with the Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

4.      Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Because this action was brought in the Circuit Court of Cook County, Illinois, venue for purposes of removal is proper in this Court. Pursuant to 28 U.S.C. § 93(a)(1), this District and this Division embrace Cook County, Illinois, the place where this removed action is pending.

5.      Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through his counsel of record. A copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Cook County, Illinois.

6.      Pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446, and as explained further below, this Court has original jurisdiction over the instant action.

## II.      ALLEGATIONS IN THE COMPLAINT

7.      Henry alleges that he submitted an employment application for the position of Technician through an unnamed temporary employment agency in or around December 2022. (Compl. ¶ 25.) Henry further alleges that he "was required to submit to a pre-employment physical as a requirement of the hiring process." (*Id*. ¶ 27.) Henry also alleges that "[d]uring the physical, the provider verbally requested Mr. Henry to disclose his family medical history, including whether medical conditions with genetic predispositions has manifested in his parents, including cardiac health, cancer, and diabetes, among other conditions." (*Id*.) In addition to the verbal questions presented, the provider allegedly "gave Mr. Henry a written questionnaire" that asked

him "to disclose whether various diseases or disorders with a genetic predisposition had manifested in his family members." (*Id*. ¶ 28.)

8.    According to Henry, he was "not directed by Defendant, either verbally or in writing, to not disclose the solicited genetic information." (*Id*. ¶ 35.)

9.    In his Complaint, Henry alleges that "[b]y indirectly or directly soliciting or requesting Plaintiff and the proposed Class members to provide their genetic information . . . Defendant violated Plaintiff's and the proposed Class members' rights to privacy in their genetic information as set forth in GIPA." (*Id*. ¶ 59.)

10.    For these alleged violations of GIPA, Plaintiff seeks, both individually and on behalf of a putative class, $15,000 for "each" intentional and/or reckless violation and $2,500 for "each" negligent violation, as well as attorneys' fees and costs incurred in this litigation. (*Id*. ¶ 61, Prayer for Relief.) Plaintiff also seeks declaratory, injunctive, and equitable relief. (*Id*.)

11.    Plaintiff seeks to represent a class of individuals and defines the proposed class as follows:

> All individuals in Illinois, from the date within five years prior to the filing of this action, (1) who applied for employment with Defendant or were employed by Defendant, and (2) from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment with Defendant.

(*Id*. ¶ 44.)

## III.    REMOVAL UNDER CAFA

12.    This putative class action is subject to the Court's jurisdiction under CAFA, 28 U.S.C. § 1332(d), because minimal diversity exists and the amount in controversy exceeds $5,000,000.

13.     CAFA was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014). Accordingly, CAFA expands jurisdiction for diversity class actions by creating federal subject-matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant ("minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. 28 U.S.C. § 1332(d); *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

14.     "The language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (quotation marks omitted).

15.     The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties" and "the amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Roppo*, 849 F.3d at 579.

16.     This case meets all the requirements for jurisdiction under CAFA and 28 U.S.C. § 1332(d)(2).

**A.    This matter is a "class action" under CAFA.**

17.     A "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, Henry seeks to certify a class of all individuals in Illinois "who applied for employment with Defendant or were employed by Defendant" and from whom Defendant or its agent "requested and/or obtained

4

genetic information, including family medical history." (Compl. ¶ 44.) Therefore, this action is properly considered a "class action" under CAFA.

### B. The requirement of minimal diversity is met.

18.    The requirement of minimal diversity is also satisfied. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). Citizenship of the parties and jurisdiction are determined at the time of removal. *See Cleary v. Philip Morris Inc*., 656 F.3d 511, 515 (7th Cir. 2011) (a "federal court's jurisdiction under CAFA is determined at the time of removal"); *In re Burlington N. Santa Fe Ry. Co*., 606 F.3d 379, 380 (7th Cir. 2010) (the "well-established general rule is that jurisdiction is determined at the time of removal").

19.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 2008 WL 4812658, at *1 (N.D. Ill. Oct. 29, 2008) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State.")). Residence is *prima facie* evidence of domicile. *Seaboard Finance Co. v. Davis*, 276 F. Supp. 507, 509 (N.D. Ill. 1967) ("The domicile is the state in which a person resides with the intention of remaining."). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Ner Tamid Congregation of North Town v. Krivoruchko*, 620 F. Supp. 2d 924, 931 (N.D. Ill. 2009) (citing *Newman-Green, Inc.*, 490 U.S. at 830 ("To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile when the complaint was filed.")).

20.     Defendant is incorporated in the state of Delaware, with its principal place of business and headquarters in North Chicago, Illinois. (Compl. ¶ 11; Acevedo Decl. ¶ 3.) Accordingly, Defendant is a citizen of Delaware and Illinois.

21.     As alleged in the Complaint, Henry is and was at all relevant times of employment with Defendant, "an individual citizen of the State of Illinois." (Compl. ¶ 10.)

22.     As for the putative class, Defendant's headquarters in North Chicago, Illinois are located just 16 miles from the Wisconsin border. (Acevedo Decl. ¶ 3.) Accordingly, at least one of the potential class members[1] resides in Wisconsin as of the date of removal. Indeed, a significant number of AbbVie employees reside in Wisconsin. (*Id*. ¶ 7.)

23.     Thus, on information and belief, there is at least one class member who is a citizen of Wisconsin and is diverse from Defendant, which at this stage of the proceedings is sufficient to satisfy minimum diversity. *See Dancel v. Groupon, Inc*., 940 F.3d 381, 385 (7th Cir. 2019) (noting that an allegation "even if only 'on information and belief,' that a specific member of the putative class had 'a particular state of citizenship'" may be preliminarily accepted as a basis for subject matter jurisdiction); *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010). As a result, the parties are of diverse citizenship for purposes of 28 U.S.C. § 1332(d)(2)(A).

**C.     The "amount in controversy" exceeds the CAFA threshold.**

24.     The "matter in controversy" aggregated across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of

---

[1] AbbVie disputes that it "requested and/or obtained genetic information, including family medical history" from any person in connection with that person's application for employment or the person's employment with Defendant. But for the purpose of ascertaining potential class members, AbbVie assumes that Defendant is including in the definition workers in Illinois for whom the company provided medical surveillance at the beginning of their work, for safety reasons.

determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . . ." 28 U.S.C. § 1332(d)(6).

25.     Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

26.     Defendant's burden to demonstrate the amount in controversy under CAFA is low and it need show only that there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans*, 427 F.3d 446, 448 (2005). If the party opposing federal jurisdiction contests the amount in controversy, the proponent must "prove those jurisdictional facts by a preponderance of the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006).

27.     The Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg*, 639 F.3d at 763. Accordingly,

"[t]he party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448). This burden thus "'is a pleading requirement, not a demand for proof.'" *Id*. (quoting *Spivey*, 528 F.3d at 986). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, [citation omitted] the case belongs in federal court *unless* it is legally impossible for the plaintiff to recover that much." *Id*. at 764 (citing *Spivey*, 528 F.3d at 986; *Brill*, 427 F.3d at 448).

28.    Additionally, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claim which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

29.    Defendant denies the validity and merits of Henry's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that flow therefrom. However, for purposes of removal (and without conceding that Henry or the putative class are entitled to damages or penalties), the aggregated claims of the putative class establish, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum of $5,000,000 as detailed below.

30.    Henry alleges that Defendant "employs over 1,000 people in Illinois, and it is believed that all or most of those individuals will fall within the proposed class." (Compl. ¶ 46.) Henry seeks for himself and for each putative Class Member $15,000 for "each" violation

intentional and/or reckless violation of GIPA. (Compl. ¶¶ 61; Prayer for Relief.) Taking Plaintiff's allegations as true, and assuming at least one thousand employees within the proposed Class will be awarded $15,000 for a single reckless or intentional violation of GIPA, damages would total well more than $5 million.[2]

31.     Moreover, within the five years preceding this lawsuit, AbbVie hired in excess of 334 employees for its Illinois locations that underwent certain post-hire medical examinations due to placement in safety-sensitive positions. (Acevedo Decl. ¶ 6.) A significant number of these individuals reside in Wisconsin. (*Id.* at ¶ 7.)

32.     Accordingly, the 100 class member and over $5 million amount in controversy thresholds of CAFA are met.

## IV.     PLAINTIFF'S COMPLAINT ALLEGATIONS ESTABLISH ARTICLE III STANDING REQUIRED FOR FEDERAL COURT JURISDICTION.

33.     "[A]s always, 'subject-matter jurisdiction is the first issue in any case.'" *Woods v. FleetPride, Inc.*, 2022 WL 900163, at *3 (N.D. Ill. Mar. 27, 2022) (quoting *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019)). If, after removal of a case from a state court, it "appears that the court lacks subject matter jurisdiction, the case shall be remanded." *Id.* (quoting 28 U.S.C. ¶ 1447(c)) (citations omitted). It is the party seeking removal that "bears the burden of establishing federal jurisdiction." *Id.* (quoting *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017)).

34.     Article III of the Constitution requires an actual case or controversy between the parties. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994). Three requirements must be met for Article III standing: "(1) plaintiff must have suffered an actual or imminent, concrete or particularized injury-in-fact; (2) there must be a causal connection between the injury and the

---

[2] 1,000 employees x $15,000 intentional or reckless violation of GIPA = $15M.

conduct complained of; and (3) there must be a likelihood that the injury will be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621-22 (7th Cir. 2020), *as amended* (June 30, 2020) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992)).

35.     In *Spokeo v. Robins*, the Supreme Court explained that a "concrete" injury must actually exist but need not be tangible. 578 U.S. 330, 340-41 (2016). A legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (quoting *Lujan*, 504 U.S. at 578). But "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III." *Id*. "Instead, the plaintiff must show that the statutory violation presented an 'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016)).

36.     Analogous to a GIPA claim is a claim under the similar Illinois Biometric Information Privacy Act ("BIPA," 740 ILCS 14/ *et seq*.), which prohibits a private entity from capturing or collecting an aggrieved person's biometric information or identifiers without first providing a publicly available retention schedule, a written notice, and obtaining written consent. *See id*. The Seventh Circuit analyzed whether a plaintiff bringing a BIPA claim has Article III standing when it decided *Bryant*. In *Bryant*, the court analyzed, among other claims, whether a concrete harm is inflicted under Section 15(b) of BIPA when a private entity fails to provide written notice or obtain written consent before capturing or collecting an aggrieved person's biometric information or identifiers. *See Bryant*, 958 F.3d at 619. The *Bryant* court analyzed the *Spokeo* decision and focused on Justice Thomas's concurring opinion, which drew a distinction between two types of injuries. The first, he said, arises when a private plaintiff asserts a violation

of their own rights; the second occurs when a private plaintiff seeks to vindicate public rights. *Id*. at 624. Applying Justice Thomas's rubric, the *Bryant* court concluded that plaintiff's 15(b) BIPA claim was a violation of her own rights, such that her claim had Article III standing. *See id.* ("[W]e have no trouble concluding that Bryant was asserting a violation of her own rights—her fingerprints, her private information—and that is enough to show an injury-in-fact without further tangible consequences.").

37.     Similarly here, Henry alleges that Defendant violated his rights by requiring him to disclose his personal genetic information in violation of GIPA. (*See* Compl. ¶¶ 54-58.) Plaintiff further alleges that Defendant's violations of GIPA. "were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA." (*Id*. ¶ 42.) Additionally, Plaintiff alleges that Defendant failed to advise him "either verbally or in writing, not to provide genetic information when requested to provide his family medical history." (*Id*. ¶ 57.) In other words, Plaintiff alleges that Defendant did not provide information to Plaintiff sufficient for him to know that he could refuse to provide family medical history if asked—just as the plaintiffs in *Bryant* alleged substantive information was withheld from them, resulting in them allegedly providing biometric information without informed consent. *Bryant*, 958 F.3d at 626.

38.     These allegations are nearly identical to the 15(b) claim made by *Bryant*. Therefore, consistent with the *Bryant* court's Article III decision on a 15(b) claim under BIPA, the allegations in Plaintiff's Complaint establish Article III standing.

39.     The Seventh Circuit has similarly concluded that other intangible, yet concrete, purported invasions of privacy or unconsented conduct satisfies Article III standing. *See, e.g., Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (holding that a claim under the Telephone Consumer Protection Act for unconsented text messages satisfies Article III

standing); *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (holding that a data breach claim for the increased risk of fraudulent credit- or debit-card charges was not a mere "allegation[] of future injury, but instead were the type of 'certainly impending' future harm that the Supreme Court requires for standing."); *Santangelo v. Comcast Corp.*, 341 F. Supp. 3d 830, 835 (N.D. Ill. 2018) (consumer suffered an injury-in-fact that was fairly traceable to internet service prover's actions in pulling his credit score without consent, in violation of the Fair Credit Reporting Act.)).

40.     Plaintiff's allegations also satisfy the second and third prongs for Article III standing under *Lujan* because any injury Plaintiff purportedly suffered was caused directly by Defendant's alleged failure to comply with GIPA, and the prospect of statutory damages shows that such an injury is redressable. *See, e.g., Bryant*, 958 F.3d at 621.

## V.     CONCLUSION

41.     Accordingly, the above facts and the relevant allegations in Plaintiff's Complaint establish that removal is proper under CAFA because, while liability is denied, the class exceeds 100 individuals, the $5 million amount in controversy threshold is met, and there are potential class members who are citizens of a state other than Illinois.

42.     Should Plaintiff seek to remand this case to state court, Defendant respectfully asks that it be permitted to brief and argue the issue of this removal prior to any order remanding this case. In the event the Court decides remand is proper, Defendant asks that the Court retain jurisdiction and allow Defendant to file a motion asking this Court to certify any remand order for interlocutory review by the Seventh Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

WHEREFORE, Defendant AbbVie notifies this Court, Plaintiff, and the Circuit Court of Cook County, Illinois, that this action has been removed to the United States District Court,

Northern District of Illinois. Defendant further requests that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.


DATED: December 15, 2023                    Respectfully submitted,

                                            ABBVIE INC.


                                            By:  */s/ Ada W. Dolph*  _____
                                                    One of Its Attorneys

Ada W. Dolph
adolph@seyfarth.com
Danielle Kays
dkays@seyfarth.com
Ala Salameh
asalameh@seyfarth.com

SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail address denoted on the electronic Mail Notice List, and sent via electronic mail to:

Edward A. Wallace
Mark R. Miller
Nicholas P. Kelly
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
eaw@wallacemiller.com
mrm@wallacemiller.com
npk@wallacemiller.com

David J. DiSabato
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
ddisabato@sirillp.com

Kyle D. McLean
SIRI & GLIMSTAD LLP
700 Flower Street, Suite 1000
Los Angeles, CA 90017
kmclean@sirillp.com

*/s/ Ada W. Dolph*

14