UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL HENRY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBVIE INC.,<br><br>Defendant. | Case No. 1:23-CV-16830<br><br>**Hon. Manish S. Shah** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Daniel Henry ("**Plaintiff**"), by and through his counsel, respectfully submits this Response in Opposition to Defendant Abbvie Inc.'s ("**Defendant**") Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint (the "**Motion**").

**I.  INTRODUCTION**

Plaintiff's Class Action Complaint (the "**Complaint**", Dkt. No. 1-1) states plausible claims that Defendant violated the rights of Plaintiff and numerous other Illinois employees by improperly requesting their genetic information during a preemployment physical. Defendant asks the Court to dismiss Plaintiff's claims, arguing that the Court should create new, non-existent elements to assert a claim for violation of the Illinois Genetic Information Privacy Act, 410 ILCS 513/1, *et seq*. ("**GIPA**"). There is no support for such requirements in GIPA's text or legislative history, and the Court should reject Defendant's suggestions to the contrary.

GIPA prohibits companies that employ Illinois residents from directly or indirectly requesting genetic information of a person or a family member of the person as a condition of

1

employment. 410 ILCS 513/25(c)(1). Genetic information includes information about the manifestation of a disease or disorder in a person's family members, which in turn is defined as individuals related by blood or law to the individual.

Thus, to sufficiently plead a GIPA violation, a plaintiff need only allege two elements: (1) that there was a request for his or her family medical history and (2) that the request was a condition of employment or application for employment. Defendant concedes that Plaintiff alleges "that as part of the hiring process, he was required to submit to a preemployment physical" whereat the provider "verbally requested [him] to disclose his family medical history, including whether medical conditions with genetic predispositions has manifested in his parents . . . including cardiac health, cancer, and diabetes, among other ailments." Motion, p. 4 (citing Complaint, ¶ 27). Accordingly, Plaintiff has sufficiently pleaded the facts necessary to establish a claim under the text of GIPA.

Unable to dispute that Plaintiff has failed to plead the textual requirements for a GIPA claim, Defendant attempts to argue that the Court should add additional requirements that the Legislature never imposed, including requiring Plaintiff show discrimination, misuse of the genetic information, and an adverse employment action. None of these things are required to state a claim under GIPA. Defendant's suggested requirements are predicated upon a tortured reading of the statute. To be sure, the statute also prohibits discrimination, misuse, and adverse employment actions, but those are prohibited separately, and **any** violation of conduct prohibited by GIPA creates a private right of action. Thus, unlawful requests, discrimination, misuse, and adverse employment actions are all prohibited by GIPA, but there is no requirement that all four be present to create a claim; an unlawful request alone is sufficient in and of itself to give rise to a cause of action.

Next, Defendant attempts to dodge its burden of proof by asserting that Plaintiff must plead that Defendant's "inadvertent request" affirmative defense does not apply. This argument is procedurally backwards and asks the Court to ignore the Seventh Circuit's clear pronouncement that "an affirmative defense must be raised in the answer, not by motion." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) Finally, Defendant argues that its mental state is an required element of pleading a GIPA violation, but its intent is not a pleading requirement – intent merely determines what remedies are available to Plaintiff.

Thus, the Court should deny Defendant's Motion and permit Plaintiff and the putative class to pursue their claims based on Defendant's unlawful requests for genetic information.

## II. NEITHER GIPA'S TEXT NOR ITS LEGISLATIVE HISTORY SUPPORTS DEFENDANT'S ARGUMENTS

Illinois enacted GIPA in 1998. The Seventh Circuit recognized that, in setting forth its intent in passing GIPA, the Legislature explained that GIPA would "limit [] the use or disclosure of, **and requests for**, protected health information to the minimum necessary." *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 691 (7th Cir. 2023) (citing 410 ILCS 513/5(5) (emphasis added)). It, therefore, created GIPA to reassure the public that they could learn their genetic makeup without fear of it being misused later.

Recognizing that the allegations in the Complaint satisfy the pleading requirements in the text of GIPA, Defendant's Motion attempts to artificially raise the bar by suggesting several new atextual requirements for a violation of Section 25(c)(1) of GIPA. These new requirements purport to include that, in addition to an unlawful request, Plaintiff must allege misuse of genetic information or an adverse employment action. This is a classic strawman argument devoid of statutory or caselaw support. Nothing in Section 25(c)(1) requires a plaintiff to show any of Defendant's proposed additions in order to state a claim for an unlawful request. Defendant's

3

cherry-picked references to GIPA's legislative history misrepresents the Legislature's intent behind the statute, which was to encourage the public to embrace genetic testing by eliminating any perception that any protected information could later be used against them.

### A. GIPA Does Not Require Discrimination, Misuse, or an Adverse Employment Action as an Element of a Claim for Improper Request of Genetic Information

Defendant asks the Court to ignore the text of GIPA in an attempt to avoid liability. Despite these efforts, black letter principals of statutory interpretation establish that neither discrimination, nor misuse, nor an adverse employment action is required to allege a GIPA violation. Under Illinois law, "[w]hen construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute." *Skaperdas v. Country Cas. Ins. Co.*, 2015 IL 117021, ¶ 15. "In interpreting a statute, no part should be rendered meaningless.… Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express." *Id.*[1]

Plaintiff's claims are premised exclusively on Section 25(c)(1) of GIPA. Nothing in sub-section (c)(1) suggests that a plaintiff must show either discrimination, misuse, or an adverse employment action to state a claim. All that the sub-section requires is that the employer cannot "solicit" or "request" "genetic information as a condition of employment, [or] preemployment application." As such, any company that makes such a solicitation or request violates GIPA. To be clear, Section 25 does prohibit discrimination, misuse, or an adverse employment actions, but it does so in different sub-sections. A complete reading of Section 25 shows that sub-section (c)(3) addresses discrimination, sub-section (b) (among others) addresses misuse, and sub-sections (c)(2)

---

[1] As noted by Defendant: The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning; where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *See* Motion, p. 13, fn. 7(citing *In re Hernandez*, 2020 IL 124661, ¶ 18. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003)).

and (c)(4) address adverse employment actions. Nothing in either Section 25 or Section 40 of GIPA suggests that a plaintiff must show a violation of sub-sections (c)(2) through (c)(4) to establish a claim under sub-section (c)(1).

Defendant's fundamental misunderstanding of the requirements of an unlawful request claim are further revealed in its reliance on cases analyzing discrimination rather than unlawful requests. GINA has a similar separation of requirements to GIPA, where GINA subsection (a) prohibits discrimination based on genetic information and subsection (b) prohibits unlawful requests for such information. 42 U.S.C. § 2000ff-1. Defendant's failure to distinguish the two is telling. *See, e.g.,* Motion, p.12 (citing *Tovar v. United Airlines Inc.*, 985 F. Supp. 2d 862, 874–75 (N.D. Ill. 2013); Motion, p. 9 (citing *Munnerlyn v. Installed Bldg. Prod., LLC, et al.*, No. 1:20-CV-225, 2020 WL 2528547 (W.D. Tex. May 18, 2020). There simply is no requirement that Plaintiff plead that Defendant misused his genetic information, or took an adverse action, or discriminated against him in order to state his unlawful request claim.

In fact, federal courts regularly hold that employers can be liable under GINA even when the defendant never obtained **any** genetic information in response to an unlawful request. *See Grisham*, 191 F. Supp. 3d at 994 (finding the defendant violated GINA even when the plaintiff refused to provide genetic information in response to the defendant's request); *see also Tedrow*, 2022 U.S. Dist. LEXIS 45553, at *16 (denying the defendant's motion to dismiss the plaintiff's GINA claim even though the defendant never acquired the plaintiff's genetic information); *Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682, *41-43 (E.D. Ky. Jun. 21, 2018) (denying an employer's motion for summary judgment on GINA claim for unlawful request of genetic information where the plaintiff "refused to turn over her genetic information[.]" Although the defendant took no adverse employment action against the plaintiff, "Jackson's GINA claim

arises from § 2000ff-1(b)" and "[b]ecause Jackson has put forward proof that the medical records requested contained protected 'genetic information' in the form of her family history … she has proven that Regal made an unlawful request for genetic information.").

Given that the stated goal of GIPA was to eliminate even the fear that genetic information could be used against an individual, thereby freeing that individual to acquire genetic information for health purposes, it makes sense that the Legislature would tell employers they could not directly or indirectly request genetic information. The request alone would raise questions about why the employer was asking for that information and could discourage people from learning about their family medical history. Because the purpose of GIPA is broader than merely preventing discrimination, Defendant's argument is inconsistent with the stated purpose of GIPA and should be rejected, as it was under GINA in *Jackson*. Defendant's proposal to require discrimination, misuse, and/or an adverse employment action to state any GIPA claim is clearly flawed because it would render sub-section (c)(1) meaningless. If Defendant had also taken adverse actions against Plaintiff on account of his genetic information after making an unlawful request, then Plaintiff would have multiple claims against Defendant.

### B. The Complaint Properly Alleges that Defendant Requested Plaintiff's Genetic Information in the form of Medical Conditions with Genetic Predispositions that Manifested in his Family Members

In its Motion, Defendant contends that "Plaintiff fails to establish that the unidentified information he allegedly provided about his family constitutes genetic information. Plaintiff simply alleges the conclusion that he disclosed genetic information, including his family members' medical histories." Motion, p. 9. Defendant also incorrectly asserts that "Plaintiff does not allege or conclude that Defendant believed his family members' medical histories had a genetic component." *Id.* A cursory reading of the Complaint demonstrates that, in reality, Plaintiff alleges

6

far more than that. The Complaint alleges that, during a preemployment physical, Plaintiff was requested to disclose "whether medical conditions with genetic predispositions [had] manifested in his parents, including cardiac health, cancer, and diabetes, among other conditions." Complaint, ¶ 27. The Complaint also alleges that Defendant requests this information "for the purpose of evaluating the risk that the individual may have inherited genetic conditions from family members, and then improperly uses that information when making its hiring decisions[.]" Complaint, ¶ 38.

As this Court recently held, these allegations are sufficient to state a plausible unlawful request claim under GIPA. *See Weller v. Sagility*, No. 1:23-cv-15626, Dkt. No. 19 (N.D. Ill. Mar. 25, 2024) (Shah, J.) ("Family members include individuals related by blood or law to the individual, 410 ILCS 513/10, and it is reasonable to infer in plaintiff's favor that plaintiff's parents are related by blood or law to plaintiff.")

Defendant's reliance on *Green v. Whataburger Rests. LLC*, No. 5:17-cv-243, 2018 WL 6252532, at *1 (W.D. Tex. Feb. 22, 2018) is misplaced for multiple reasons. First, *Green* is distinguishable because it concerns GINA claims for discrimination and retaliation under 42 U.S.C. § 2000ff-1(a); here, Plaintiff's claims are solely based on an unlawful request claim, which is distinct and is analogous to a 42 U.S.C. § 2000ff-1(b) claim. Next, the court in *Green* dismissed the GINA claims because the plaintiff did not "explain or provide any context to put Defendant on notice as to what her or her daughter's 'medical history' or 'genetic information' might be" and did not "allege any plausible factual support that would allow the Court to infer that either her or her daughter's 'medical history' or 'genetic information' constitutes 'genetic testing' or 'genetic information.'" *Id.*

Here, unlike in *Green*, the Complaint outlines precisely how the information Defendant requested is genetic information as defined by the statute: Defendant allegedly requested "whether

7

medical conditions with genetic predispositions [had] manifested in his parents, including cardiac health, cancer, and diabetes[.]" Complaint, ¶¶ 27, 30. "The basic intent of GINA is to prohibit employers from making a predictive assessment concerning an individual's propensity to get an inheritable genetic disease or disorder based on the occurrence of an inheritable disease or disorder in [a] family member." *Green v. Whataburger Rests. LLC*, No. 5:17-CV-243-DAE, 2018 U.S. Dist. LEXIS 240112, at *5 (W.D. Tex. Feb. 22, 2018). The Complaint alleges that this is exactly what Defendant did – "Defendant requests this family medical history information as part of an effort to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions, including but not limited to hypertension, cancer, heart conditions, diabetes, and stroke, which Defendant believes could be inherited and that could be exacerbated by workplace conditions, especially if these conditions are high-stress and/or physically demanding." *See* Complaint, ¶¶ 38-39.[2]

This highlights Defendant's flawed reliance upon discrimination cases rather than unlawful request claims – if Plaintiff alleged that Defendant discriminated against him on the basis of genetic information, then naturally he would have to provide that genetic information to Defendant, otherwise there would be no way for Defendant to use that information in a discriminatory fashion. However, GIPA makes the request itself a violation, and Plaintiff is pursuing an unlawful request claim – not a discrimination claim. Plaintiff is not required to allege that he provided genetic information in order to state his claim, because the violation here is

---

[2] Recently, in an analogous GIPA case, defense counsel argued that a complaint failed to state a claim because the plaintiffs there "do not allege or conclude that Defendants believed [the plaintiffs'] family members' medical histories had a genetic component, or otherwise reflected Plaintiffs' genetic predisposition to contract any disorder, disease, or condition." *See McKnight v. United Airlines*, 1:23-cv-16118, Dkt. No. 28, p. 9 (N.D. Ill. Feb. 9, 2024). Here, such allegations are made in the Complaint, but counsel now takes the position that the allegations are nevertheless insufficient. *See* Motion, p. 19. They cannot have it both ways.

8

Defendant's request itself, not the response to that request. Plaintiff need not allege that Defendant misused his genetic information in order to state a claim that Defendant unlawfully requested it.

Taken as true in accordance with the standard at this stage of litigation, Plaintiff has sufficiently alleged that Defendant requested Plaintiff to disclose whether his family members had manifested medical conditions that may have a genetic basis, including cancer and diabetes, in an effort to predict whether Plaintiff was susceptible to such ailments. Defendant's alleged conduct is precisely that which the Legislature sought to prevent by enacting GIPA. As such, Defendant has sufficient context and notice to put the company on notice of Plaintiff's claim, and the Complaint properly pleads a claim for unlawful request of genetic information.

### C. The Complaint Properly Alleges that Defendant's Unlawful Request was a Condition of Employment

Defendant attempts to argue that the Complaint fails to allege Plaintiff's "alleged employment opportunities were conditioned on the provision of family medical history during the pre-work examination." Motion, p. 10. However, as Defendant is well aware, "conditions of employment" include "such matters as hiring, firing, wages, discipline, supervision, direction, scheduling, seniority, overtime, work assignments, and the manner and method of work performance." *Weis Builders, Inc. v. Int'l Union, Local Union No. 150*, 2017 U.S. Dist. LEXIS 16647, at *11 (N.D. Ill. Feb. 7, 2017).

Accordingly, the Complaint alleges that Plaintiff was "required" to submit to the pre-employment physical whereat his genetic information was requested. Complaint, ¶¶ 27, 32-34, 55. Something that is required is not optional, and nothing in the Complaint suggests that Plaintiff could have refused to attend the physical and still been hired. Thus, the Complaint makes clear (and Defendant does not dispute) that Plaintiff was required to attend the physical to be hired,

thereby subjecting himself to the unlawful request for his genetic information. As such, Defendant's requests were a condition of employment.

Defendant's interpretation of the holding in *Ortiz v. City of San Antonio Fire Dep't* is certainly creative. In *Ortiz*, the Fifth Circuit simply held that the district court correctly granted summary judgment of a discrimination and retaliation claim under GINA "because Ortiz presented no evidence that SAFD requested, required, or purchased his genetic information, or discriminated against him on the basis of genetic information. Rather, he appears to misread the statute as forbidding any mandatory wellness program[.]" *Ortiz*, 806 F.3d 822, 826 (5th Cir. 2015). There was no discussion whatsoever regarding the condition of employment prong for an unlawful request claim under GIPA – because there is no such element under GINA.

The Complaint properly alleges that Plaintiff was required to attend a pre-employment physical, and that during this physical, his genetic information was requested. As such, the requisite elements for Plaintiff's claim have been satisfied.

### III. PLAINTIFF IS NOT REQUIRED TO PLEAD THAT THE INADVERTENT EXCEPTION DOES NOT APPLY

Defendant argues that it should be excused from liability because – according to Defendant – its violation of GIPA was inadvertent. Caselaw confirms the defense of inadvertence is an affirmative defense that should be raised – if even applicable – in the context of a motion for summary judgment. Regardless, Defendant has failed to show that its unlawful request for Plaintiff's genetic information was inadvertent. If Defendant contends that Plaintiff inadvertently disclosed genetic information that was not requested, it must raise that defense in its answer to the Complaint.

### A. Analogous Caselaw Confirms the Inadvertent Request Defense Should be Determined on a Motion for Summary Judgment

Although there is no Illinois caselaw evaluating GIPA's inadvertent request defense, the federal counterpart in GINA has been analyzed by the courts in the context of overly broad medical records requests. For example, in *Jackson*, *supra*, an employee alleged that her employer violated GINA when its agent requested her to provide medical records for review related to a diagnosis of colon cancer. The records sought included "all medical records" related to her diagnosis, treatment, prognosis, testing, and medications related to her condition. 2018 U.S. Dist. LEXIS 103682, at *4-5. When the employee refused to do so, the employer informed her that she could experience an adverse employment action if she did not comply. *Id.*, at *6. The employee filed suit alleging a violation of GINA, and the employer filed a motion for summary judgment on the claim on the basis that the genetic information request was inadvertent. *Id.*, at *44-45. The court denied the employer's motion for summary judgment on the issue because the request was not narrowly tailored to limit the likelihood of obtaining genetic information in response to the request.

The *Jackson* court held that, for the employer to prove the request was inadvertent, it must show that "its request for medical information was not likely to result in [the employer] obtaining genetic information. *Id.*, at *46. The court rejected the employer's argument that the request for medical records was narrowly tailored: "A review of Dr. Haskell's request, which identified Jackson's 'medical condition of concern' as 'surgery — all medical records' and sought medical records containing Jackson's current diagnosis, treatment, medications, restrictions, limitations, prognosis, any relevant tests, and 'any additional information that [Jackson's] medical provider [thought] would help' make the medical recommendation, reveals an extremely broad request." *Id.* at *46-47.

The court found that any "broad response" the employee would have provided in response to the medical records request "would have been elicited by Dr. Haskell's 'overly broad' request. Because Dr. Haskell's request for Jackson's medical information was not 'tailored' to avoid requesting genetic information, Regal's request was 'likely to result in a covered entity obtaining genetic information' and was not 'inadvertent.'" *Id.* The court accordingly found that Regal had violated GINA by making an unlawful request for Jackson's genetic information, and Jackson was entitled to partial summary judgment on her GINA claim.

Likewise, *Montgomery v. Union Pacific R.R.*, No. C-17-00201-TUC-RM, 2018 WL 6110930 (D. Ariz., Nov. 21, 2018) confirms that the inadvertent request issue is properly determined via a motion for summary judgment. In *Montgomery*, the plaintiff underwent a post-offer medical examination; following the examination, the defendant requested the plaintiff to provide preexisting medical records to assist with its medical assessment. *Montgomery*, 2018 WL 6110930, at *8. "Defendant's request did not contain a warning advising Plaintiff's physicians to redact or exclude Plaintiff's genetic or family health information." *Id.* The court denied the defendant's request for summary judgment because "Plaintiff's claim is that Defendant unlawfully requested medical records without instructions to redact family history" and the defendant "has failed to show its request was unlikely to result in the receipt of genetic information." *Id.* at *26.

These cases highlight that Defendant is mistaking a standard for an affirmative defense for a substantive pleading requirement. As the Seventh Circuit has noted, "an affirmative defense must be raised in the answer, not by motion." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) (citing *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022)). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *see Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645

(7th Cir. 2019). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010); *see also H.A.L. N.Y. Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020); *see also Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020).

### B. Defendant does not Meet its Burden of Showing the Inadvertent Request Defense does not Apply

The Equal Employment Opportunity Commission ("**EEOC**") is the federal agency charged with enforcing GINA. The agency has made clear that, under GINA's identical prohibition of unlawful requests for genetic information, any time an employer requests health-related information, "it should warn the employee and/or health care provider from whom it requested the information not to provide genetic information"; to take advantage of the inadvertent request defense, the employer "must do what is reasonably necessary to ensure that the warning is understood by employees … This is best accomplished by providing the warning each time health-related information is requested."[3] EEOC guidance reiterates that Defendant should have warned Plaintiff to refrain from providing genetic information at the time it requested his medical information: "the employer [should] include warning language like that provided for in EEOC's regulations implementing Title II of GINA on any release to ensure that acquisition of any genetic information in response to the request will be considered inadvertent."[4]

Even if Defendant had properly raised this affirmative defense, it nonetheless offers absolutely no evidence to meet its burden of proof that the alleged unlawful requests were inadvertent. The factual issues surrounding Defendant's affirmative defenses are not yet ripe for

---

[3] *See* https://www.eeoc.gov/laws/guidance/questions-and-answers-small-businesses-eeoc-final-rule-title-ii-genetic-information.
[4] *See* https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-226.

determination – it has not even filed its answer to the complaint – and certainly cannot act to| bar to Plaintiff's claims at this juncture.

    **IV.    DEFENDANT'S MENTAL STATE IS NOT AN ELEMENT OF PLAINTIFF'S CLAIM**

Several courts in Illinois have held that plaintiffs are not required to allege a defendant's state of mind to proceed with their BIPA claims because a defendant's state of mind is not an element of the violation. *See Webster v. Triad Senior Living, Inc.*, 2020 Ill. Cir. LEXIS 1449, *11 (Cook Cty. Aug. 31, 2020) (denying a motion to dismiss a BIPA claim on the same grounds: "Webster does not need to plead anything further than a violation of BIPA to pursue liquidated damages.") (citing *Dloogatch v. Brittcat*, 396 Ill. App. 3d 842, 851 (1st Dist. 2009) (a plaintiff is generally "not required to plead a legal theory for calculating damages in the complaint").

"[T]he need to demonstrate negligence, intentional action, or recklessness impacts a plaintiff's recovery, not the underlying substantive BIPA violation." *Horn v. Method Prods., PBC*, No. 21 C 5621, 2022 U.S. Dist. LEXIS 67354, at *4-5 (N.D. Ill. Apr. 12, 2022) (citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶ 33, 36); *see also Castro v. El Milagro, Inc.*, No. 22 C 03943, 2023 U.S. Dist. LEXIS 124155, at *9 (N.D. Ill. July 19, 2023) ("Because the mental state of the alleged violator is not an element of establishing a BIPA violation—it merely determines to which remedies the prevailing party is entitled—a plaintiff is not required to plead any mental state."); *see also Kyles v. Hoosier Papa Ltd. Liab. Co.*, No. 1:20-CV-07146, 2023 U.S. Dist. LEXIS 54996, at *18-19 (N.D. Ill. Mar. 30, 2023) ("Papa John's state of mind has no bearing on the plausibility of Plaintiff's alleged BIPA claims themselves but will merely determine what damages Plaintiff may recover.")

What Defendant planned to do with Plaintiff's genetic information is only known by Defendant at this juncture. Thus, the issue of whether Defendant's conduct is merely negligent or

14

rises to the level of recklessness is an issue of fact that can only be properly determined after discovery is completed. Yet, the Complaint nonetheless plausibly alleges that Defendant acted intentionally or recklessly given that GIPA has prohibited this conduct for over 25 years and Defendant made no effort to comply with its requirements. *See Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) ("BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible.").

In addition, if Plaintiff's request for liquidated damages in connection with Defendant's intentional or reckless conduct is dismissed, then further jurisdictional issues will arise. Defendant's amended notice of removal asserts CAFA jurisdiction on the basis of GIPA's provision of statutory damages for reckless or intentional violations in the amount of $15,000 per class member. *See* Dkt. No. 22, ¶¶ 33-36. But, if damages are limited to $2,500 per class member for negligent violations under GIPA, then the $5,000,000 threshold required by CAFA will not be met. Defendant identified a putative class size of 334 individuals, and the Complaint alleges a class size of 1,000 individuals; even if the larger number is used, the amount in issue is well below the threshold.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (i) denying Defendant's Motion in its entirety; and (ii) granting such further and additional relief as this Court deems reasonable and just. To the extent that the Court grants Defendant's motion in whole or in part, Plaintiff respectfully requests that she be granted leave to amend.

Dated: April 9, 2024 Respectfully submitted,

    */s/ Kyle D. McLean*
Kyle D. McLean (SBN 6344126)
SIRI & GLIMSTAD LLP
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
T. (213) 376-3739
E. kmclean@sirillp.com

David J. DiSabato
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
T. 212-532-1091
E. ddisabato@sirillp.com

Edward A. Wallace
Mark R. Miller
Molly C. Wells
WALLACE MILLER
150 N. Wacker Drive, Suite 1100
Chicago, IL 60606
T. (312) 261-6193
E. eaw@wallacemiller.com
  mrm@wallacemiller.com
  mcw@wallacemiller.com

COUNSEL FOR PLAINTIFF AND THE PUTATIVE CLASS

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 9, 2024 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

*/s/ Kyle D. McLean*