UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL HENRY,
    Plaintiff,

v.

ABBVIE, INC.,

    Defendant.

No. 23 CV 16830

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Henry applied to work at defendant AbbVie, Inc. as a technician in their North Chicago, Illinois, facility through a temporary employment agency. He received a conditional offer requiring him to complete a preemployment physical examination, an exam done at AbbVie's North Chicago facility by a medical provider employed by AbbVie. During the examination, the provider asked Henry about his family medical history of certain conditions. Henry was also asked to fill out a questionnaire asking similar questions. Plaintiff seeks to represent a class and bring claims under Illinois's Genetic Information Privacy Act alleging that these requests for information violated Section 25(c)(1) of the Act, which prohibits employers from requesting genetic information of an individual or their family members as part of a preemployment application. Henry initially filed his complaint in Illinois state court. AbbVie removed the case to federal court. Henry seeks a remand, or in the alternative, asks the court to order jurisdictional discovery. AbbVie moves to dismiss the complaint.

For the reasons discussed below, Henry's motion to remand is denied. AbbVie's motion to dismiss is also denied, and because discovery will proceed on all fronts, Henry's motion for jurisdictional discovery is denied as well.

## I. Procedural History

Daniel Henry filed suit in the Circuit Court of Cook County claiming that AbbVie violated GIPA during his hiring process. AbbVie removed the case to federal court, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. AbbVie then moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). I ordered AbbVie to supplement its notice of removal to properly demonstrate minimal diversity, as required by 28 U.S.C. § 1332(d)(2). AbbVie filed an amended notice of removal, including an affidavit and exhibits supporting minimal diversity. Henry filed a motion to remand to state court, or, in the alternative, for leave to conduct jurisdictional discovery to assess whether a statutory exception to Class Action Fairness Act jurisdiction applies in this case.

## II. Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"

2

are insufficient. *Id.* At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

Because federal courts are courts of limited jurisdiction, the burden of establishing jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1997). Once a removing party proves the federal court has subject-matter jurisdiction, the burden shifts to the party opposing removal to prove that an "express exception to removability" applies. *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 679–80 (2006).

### III.  Facts

Daniel Henry applied to work as a technician at an AbbVie facility in North Chicago through a temporary employment agency. [22-1] ¶ 25.[1] As part of the application and hiring process, Henry had to complete a preemployment physical examination at AbbVie's North Chicago facility. [22-1] ¶ 27. During the physical, the medical provider, an employee of AbbVie, verbally asked Henry about his family medical history and whether Henry or anyone in either of his maternal or paternal bloodlines had various medical conditions, including cardiac health, cancer, and diabetes. [22-1] ¶¶ 27, 30. Henry was also given a written questionnaire, which also asked whether his parents had a history of cardiac health, cancer, and diabetes, among other conditions. [22-1] ¶ 28. Henry disclosed this information during the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's complaint, filed as Exhibit A to defendant's amended notice of removal, [22-1] (starting on page 13 of the exhibit).

3

physical. [22-1] ¶ 31. Henry was never told by AbbVie or the medical provider, either verbally or in writing, to refrain from disclosing genetic information. [22-1] ¶ 35. Henry was hired as a technician at the facility after completing all hiring requirements. [22-1] ¶ 36.

Henry brings this suit, on behalf of himself and all others similarly situated, alleging violations of Section 25(c) of the state's Genetic Information Privacy Act. [22-1] ¶ 51–61.

## IV. Analysis

### A. Jurisdiction

#### *1. Subject-Matter Jurisdiction under the Class Action Fairness Act*

Under the Class Action Fairness Act of 2005, district courts have jurisdiction over state-law claims in class action cases where the amount in controversy exceeds $5,000,000 (exclusive of interests and costs) and where, as relevant here, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). Henry brings this action on behalf of a putative class of all individuals in Illinois "who applied for employment with Defendant or were employed by Defendant" and "from whom Defendant, or an agent acting on behalf of Defendant, requested and/or obtained genetic information, including family medical history." [22-1] ¶ 44. Henry is a citizen of Illinois. [22] ¶ 22. AbbVie is incorporated in Delaware and has its principal place of business in Illinois and is thus a citizen of Delaware and Illinois. [22] ¶ 21; *see Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016). Henry believes that most of the over-1,000 people employed by

AbbVie in Illinois will fall within his proposed class. However, in its amended notice of removal, AbbVie put forth evidence that a putative class member is registered to vote in Wisconsin and has voted in Wisconsin in four elections over the last eight years; held a Wisconsin license at the time he was hired and renewed that license in June 2020; has a Wisconsin address on his resume and on his payroll tax elections; and continues to provide AbbVie a contact address located in Wisconsin. [22-2] ¶ 6, 7; [23]. This is adequate to establish that putative class member's Wisconsin citizenship. *See Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). Since at least one member of the putative class is a citizen of a different state than AbbVie, AbbVie has established minimal diversity.

Henry is seeking statutory damages of $15,000 per violation for each putative class member for intentional or reckless violations of GIPA, or in the alternative, $2,500 for negligent violations of GIPA. [22-1] ¶ 61. If there are around 1,000 putative class members and each is entitled to $15,000, the damages alleged are approximately $15,000,000. The amount in controversy thus exceeds $5,000,000. Because there is minimal diversity and the amount in controversy exceeds the threshold in CAFA, I have subject-matter jurisdiction.

    2.    *Exceptions to CAFA Jurisdiction*

Henry seeks to remand this case, relying on three exceptions in CAFA: (1) the local controversy exception, (2) the home-state exception, and (3) the discretionary exception.

5

CAFA is itself an exception to the normal rule that there must be "complete diversity" to remove a case to federal court. 28 U.S.C. § 1332(c)(1); *Hart*, 457 F.3d at 676–77. Instead, CAFA allows minimal diversity, but with two "exceptions to the exception": the "local controversy" and "home-state" exceptions. 28 U.S.C. § 1332(d)(4) and (d)(5), respectively; *Hart*, 457 F.3d at 677. There is also a discretionary exception for cases when between one-third and two-thirds of the class membership shares citizenship with the defendant. 28 U.S.C. § 1332(d)(3).

The local controversy exception requires a district court to decline from exercising its jurisdiction if four requirements are met: (1) at least two-thirds of the members of the putative plaintiff class are citizens of the original filing state; (2) at least one defendant is a citizen of the original filing state, is a defendant from whom the members of the proposed plaintiff class seek significant relief, and whose alleged conduct forms a significant basis of the asserted claims; (3) the principal injuries were incurred in the original filing state; and (4) there have been no other class actions asserting the same or similar factual allegations against any of the defendants in the three years before the case was filed. 28 U.S.C. § 1332(d)(4)(A). The home-state exception is much simpler: district courts must decline to exercise jurisdiction where at least two-thirds of the members of the putative plaintiff class and the primary defendants are all citizens of the original filing state. 28 U.S.C. § 1332(d)(5).

Finally, a court may decline jurisdiction if it finds that between one-third and two-thirds of the putative plaintiff class and the primary defendants are citizens of

the original filing state and the interests of justice justify declining jurisdiction based on six separate factors, 28 U.S.C. § 1332(d)(3):

> (A) whether the claims asserted involve matters of national or state interest;
>
> (B) whether the claims asserted will be governed by the laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

Once a case has been removed to federal court under CAFA, the district court has subject-matter jurisdiction over the claim. The exceptions to CAFA "concern[] whether the court exercises jurisdiction to the full, not whether jurisdiction exists." *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014) (citing *Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011)). The proponent of a remand under the local controversy, home-state, or discretionary exceptions has the burden to prove, by a preponderance of the evidence, that the exception applies. *Hart*, 457 F.3d at 680;

7

*In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010). Plaintiff needs to produce "some evidence that would allow the court to determine the class members' citizenships on the date the case was removed." *Myrick*, 764 F.3d at 665. "Guesswork," even "sensible guesswork," is not enough. *Sprint*, 593 F.3d at 674.

Henry argues that "[i]t is likely that the other Class members who applied to work at Defendant's Illinois locations live in Illinois and are citizens of the place where they live and work." [25] at 8. Henry also points out that AbbVie "has offered no proof that more than a third" of its employees come from Wisconsin. [25] at 8. But it is Henry's burden to prove that the exception applies. *Myrick*, 764 F.3d at 665. He must put forward "some evidence," and simply asserting that it is "likely" that other class members live in Illinois is not evidence that they do.

The evidence Henry does provide in his reply does not establish that two-thirds of the class is made up of Illinois citizens. Henry submits screenshots of the AbbVie LinkedIn page as evidence. [35-1] On that page, there is a box with the heading, "Where they live." [35-1]. Within that box, there are graphs showing 916 LinkedIn members who live in Wisconsin and another 336 who live in Kenosha. There are 9,721 members who live in the Greater Chicago Area, 9,324 who live in Illinois, 2,046 who live in Chicago, Illinois, and 1,542 who live in North Chicago, Illinois. Henry argues that with roughly 1,000 employees living in Wisconsin and over 20,000 employees living in Illinois, two-thirds of the class is made up of Illinois citizens. [35] at 5. There are a few problems with using this data as evidence of the citizenship of the class members.

8

First, Henry has not demonstrated that a group of LinkedIn members who represent themselves as employees of AbbVie on the social media site is a representative sample of the class. As AbbVie points out, Henry himself is not an employee of AbbVie, but a person hired through a temporary employment agency. It is not clear whether other temporary agency hires who may be part of Henry's proposed class would identify themselves as AbbVie employees on LinkedIn. Henry's proposed class also includes individuals who may never have been hired by AbbVie but went through the application process and had family medical history requested of them. [22-1] ¶ 44. These class members would not be part of the AbbVie LinkedIn page. The class, which stretches back to cover applicants and employees over the last five years, may include former employees who are no longer connected to AbbVie's LinkedIn page. Finally, there is no evidence about the number of AbbVie employees who are on LinkedIn, whether that group is representative of all AbbVie employees, or whether each person updates his or her LinkedIn profile with accurate information when he or she moves or changes jobs.

Second, residence "may or may not demonstrate citizenship." *Heinen*, 671 F.3d at 670. Citizenship requires domicile—where a person "intends to live over the long run." *Id.* Simply because a person currently lives in one place does not necessarily mean he or she is domiciled there. "It is not enough to simply establish physical presence, but in order to turn residence in fact into a domicile in law the party must show, by some objective act, his intention to maintain the residency indefinitely." *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir.1993) (internal citations omitted).

9

Intent to stay is gleaned from a person's "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Midwest Transit, Inc. v. Hicks*, 79 Fed. App'x 205, 208 (7th Cir. 2003) (internal citations omitted). Here, the only evidence Henry puts forth is residence. This is not enough to prove citizenship.

There are ways to prove citizenship that do not require polling every putative class member. For example, a random sample of employees and temporary agency employees who worked at AbbVie facilities in Illinois may be taken and analyzed according to statistical principles. *Myrick*, 764 F.3d at 665. Henry could have also limited the class to all Illinois *citizens* who applied to or were employed by AbbVie. *Sprint*, 593 F.3d at 676. However, because the class was not confined to Illinois citizens and the evidence produced was not enough to glean the citizenship of the putative class members, Henry has not met his burden to prove that either the local controversy or home-state exception applies.

For the same reason, I will not exercise my discretion to remand under Subsection (d)(3). Although it seems likely that Illinois citizens comprise at least one-third of the putative class, the evidence does not (yet) support that conclusion. If the class consists of more than two-thirds Illinois citizens, I would be required to apply the mandatory exceptions. But because the proof that between one-third and two-thirds of putative class members are Illinois citizens falls short for now, I decline to exercise my discretion to remand the case. The motion to remand is denied without

10

prejudice. As the case progresses, Henry has "the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction," at which time he may ask for a remand. *Hart*, 457 F.3d at 682.

### B. Requests for Genetic Information under Section 25(c)(1)

The Genetic Information Privacy Act regulates the use, disclosure, and acquisition of genetic information. 410 ILCS 513/5(2); *see also Bridges v. Blackstone, Inc.*, 66 F.4th 687, 688 (7th Cir. 2023). GIPA incorporates protections from the federal Genetic Information Nondiscrimination Act. *See* 410 ILCS 513/25(a) ("An employer… shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information Nondiscrimination Act of 2008") *and* 42 U.S.C. § 2000ff-1. Separately, and relevant here, under Section 25(c)(1) of GIPA, an employer may not "solicit, request, [or] require… genetic information of a person or a family member of the person… as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1). GIPA defines "genetic information" as it is defined in the Health Insurance Portability and Accountability Act. *Id.* at 513/10. Under that definition, genetic information includes, 45 C.F.R § 160.103:

    (i)    The individual's genetic tests;
    (ii)   The genetic tests of family members of the individual;
    (iii)  The manifestation of a disease or disorder in family members of such individual; or
    (iv)  Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

Section 40 provides a private right of action for "any person aggrieved" by a violation of the Act. 410 ILCS 513/40(a).

11

AbbVie argues that medical conditions and family medical history are not genetic information. [18] at 13. It further argues that the title of Subsection 25, "Use of genetic testing information by employers," contradicts the language of the statute itself, and that the intent of the legislature was to only protect genetic information, not any "generic family medical information." [30] at 3–5. But the definition of "genetic information" as defined in HIPAA, adopted by the Illinois General Assembly in GIPA, includes the "manifestation of a disease or disorder in family members" of an individual. 45 C.F.R § 160.103; 410 ILCS 513/10. A family history of cardiac health, cancer, or diabetes is a report of the manifestation of a disease in a family member and falls under GIPA's protections. *See Branson v. Caterpillar, Inc.*, No. 23-CV-14329, 2024 WL 3823157, at *3 (N.D. Ill. Aug. 14, 2024); *Taylor v. Union Pac. R.R. Co. No.*, 23-CV-16404, 2024 WL 3425751, at *5 (N.D. Ill. July 16, 2024); *McKnight v. United Airlines, Inc.*, No. 23-CV-16118, 2024 WL 3426807, at *3 (N.D. Ill. July 16, 2024).

The cases cited by AbbVie are unpersuasive. In *Baum v. Dunmire Prop. Mgmt., Inc.*, the plaintiff's father contracted COVID-19, and the plaintiff was sent home but not allowed to work from home. No. 21-CV-00964, 2022 WL 889097, at *1–2 (D. Colo. Mar. 25, 2022). Shortly after, the plaintiff was fired when the company eliminated her position entirely. *Id.* at *2. The court granted the defendant's motion to dismiss because it found that COVID-19 was not the kind of genetic information contemplated by GINA, as it was not a disease caused by a "genetic disposition." *Id.* at *7. Similarly, in *Green v. Whataburger Rests. LLC*, the court dismissed a GINA discrimination

12

complaint where the plaintiff failed to put forth evidence of what her daughter's medical history or genetic information might be. No. 5:17-CV-243, 2018 WL 6252532, at *1 (W.D. Tex. Feb. 22, 2018). The court in *Green* found there was no factual support that would allow the court to infer the medical history or genetic information was protected genetic testing or information under GINA. *Id.*

But the interpretation in those cases is contrary to GIPA's text. The statute does not limit the category of "family medical history" to inherited diseases or disorders. Genetic information under GIPA includes: an individual's genetic tests, the genetic tests of their family members, and the "manifestation of a disease or disorder" in their family members. 410 ILCS 513/10; 45 C.F.R § 160.103. And the federal regulation—which is incorporated into GIPA through 410 ILCS 513/25(a)—defines the term "family medical history" as "information about the manifestation of disease or disorder" in family members. 29 C.F.R § 1635.3(b); *see also* EEOC Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008, 75 Fed. Reg. 68915 (Nov. 9, 2010) (explaining the agency's decision not to include the word "inheritable" before "disease or disorder" in the regulation's definition of "family medical history" given the plain language of the statute and other compliance and enforcement considerations). While medical information about an employee's own diseases or disorders is not protected under GIPA if it is not genetic information, there's no similar limitation on medical information about the diseases and disorders of an employee's family members. A disease or disorder that would not be considered genetic information as it pertains to an individual could still be protected genetic

13


information if it manifests in their family members because of its possible use as an impermissible proxy. The statute's title does not change the operative text. Any request for family medical history is a request for genetic information under GIPA. Henry claims he was asked about whether certain conditions, such as cardiac conditions, cancers, and diabetes, had manifested in either his maternal or paternal lines. [22-1] ¶ 27–28, 30. This falls under the definition of genetic information in HIPAA and GIPA.

AbbVie argues that even if Henry proffered genetic information, he "does not allege facts to support his conclusion that Defendant required him to disclose his family medical history as a condition of his employment." [18] at 16. In his complaint, Henry alleges that the "physical was a condition of employment and/or preemployment application because Defendant required Mr. Henry to attend this physical in order to be hired." [22-1] ¶ 32. During that physical he was asked—both verbally and in writing—about his family medical history. [22-1] ¶ 27–28, 30. Henry also was never told not to discuss his family medical history. [22-1] ¶ 35. Taking these facts as true, as required in a motion to dismiss, *Iqbal*, 556 U.S. at 678, the reasonable inference is that had Henry not successfully completed his physical, which included disclosing his family medical history, he would not have been hired by AbbVie. This is adequate to state a claim that AbbVie requested the genetic information of Henry's family members as a part of a preemployment application.

AbbVie next argues that even if family medical history was proffered during the preemployment examination, it was not used improperly in violation of GIPA.

14

[18] at 18. AbbVie misconstrues Henry's claim. Section 25(c)(1) of GIPA does not require that an employer *use* information improperly. Instead, simply *requesting* information is prohibited: "An employer… shall not directly or indirectly… solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person as a condition of employment[ or] preemployment application." 410 ILCS 513/25(c)(1). Henry's only claim is the violation of that section, which does not require any use of the information requested. Henry has adequately stated a claim under Section 25(c)(1) of GIPA.

AbbVie contends that its request for medical records did not violate GIPA because any request was inadvertent. It further argues that because GIPA incorporates GINA, this Court "must apply the safe harbor provision in GINA." [18] at 20. In response, Henry claims that "inadvertent disclosure" is an affirmative defense. [24] at 10. AbbVie replies that the plain language of GIPA indicates that "an inadvertent request is an *exclusion* of GIPA, rather than an affirmative defense." [30] at 8. AbbVie thus argues that Henry was required to plead that the "inadvertent request" exclusion did not apply.

A "request" for genetic information includes "making requests for information about an individual's current health status in a way that is likely to result in a covered entity obtaining genetic information." 29 C.F.R § 1635.8.(a). Section 25(g) of GIPA provides an exception to Section 25's general requirement: "inadvertently requesting family medical history by an employer, employment agency, labor organization, and licensing agency does not violate this Act." 410 ILCS 513/25(g). An

15

inadvertent request makes any acquisition of genetic information lawful. 410 ILCS 513/25(j).

A request is inadvertent if it directs the individual "not to provide genetic information" but still results in genetic information being disclosed in response. 29 C.F.R. § 1635.8(b)(1)(i)(A). The regulation provides an example of safe-harbor language that makes any disclosure of genetic information in response to a request inadvertent.[2] *See id.* § 1635.8(b)(1)(i)(B). In other words, an employer can avoid liability by properly warning an individual to withhold genetic information when responding to a request for medical information.

Even absent this language, an employer's request may be inadvertent where the disclosure is an "overly broad response… in response to a tailored request," *id.* § 1635.8(b)(1)(i)(C); the request is made under certain employment laws, *id.* § 1635.8(b)(1)(i)(D); or disclosure is made accidentally, like overhearing a conversation. § 1635.8(b)(1)(ii).

The inadvertent disclosure exception is not an element of a plaintiff's claim. It is an affirmative defense. An affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case." *Bell v. Taylor*, 827 F.3d

---

[2] Here's the example: "The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services."

699, 704–05 (7th Cir. 2016) (quoting *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n.9 (7th Cir. 2005)). A plaintiff is not required to address potential affirmative defenses in his pleading. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Generally, when there are separate exemptions to prohibitions of a statute, courts consider the exemptions affirmative defenses. *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 91 (2008). An exemption from prohibited conduct does not mean the conduct never occurred; instead, an exemption assumes that prohibited conduct occurred, but that there are additional facts that show why that conduct was acceptable. *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676–77 (7th Cir. 2016) (holding that exemptions to prohibited transactions under the Employee Retirement Income Security Act are affirmative defenses that a plaintiff need not address in his or her complaint). This is what the inadvertent disclosure exemption does. It assumes that there was a prohibited disclosure. It then allows for additional facts to show why the disclosure was not unlawful. Because inadvertent disclosure is an affirmative defense, Henry had no obligation to address it in his complaint.

In any case, Henry has adequately pleaded that AbbVie's request for medical history was not inadvertent, and that no safe-harbor language was provided. In his complaint, Henry alleges that the medical provider specifically asked about family medical history; this is not the case where Henry gave a broad response to a narrow question of his own medical history. [22-1] ¶ 27–28, 30. As alleged, AbbVie did not include any safe-harbor language in either the written questionnaire or in asking

17

Henry verbally about family medical history. [22-1] ¶ 35. Henry also declares he never gave any written authorization for the use of his genetic information in furtherance of a workplace wellness program. [22-1] ¶ 35. This is sufficient to allege, at the motion to dismiss stage, that AbbVie's request was not inadvertent.

AbbVie next argues that its preemployment medical examination was "lawful and appropriately required." [18] at 21. But as AbbVie acknowledges, Henry does not claim that the medical examination itself was unlawful or inappropriate. [18] at 17. As explained above, requesting medical information about an employee's own manifested diseases or disorders is not prohibited by GIPA. Henry does not argue to the contrary. Rather, his claims are about the request for his family medical history. This is sufficient to state a claim under GIPA.

Finally, AbbVie contends that Henry failed to allege facts regarding AbbVie's mental state. [18] at 17. It claims Henry simply parrots the language of the statute. But that is not true—the complaint says that AbbVie purposely asked about family medical histories to evaluate the risk that those it hires may have inherited conditions and "to avoid risk and/or liability for workplace injuries and/or deaths caused by genetic conditions." [22-1] ¶ 38–39. Henry further alleges that AbbVie knew or should have known that its provider would ask about family medical history, and that AbbVie knew or should have known about its obligations under GIPA. [22-1] ¶ 40–41. Ultimately, Henry's complaint sets forth that "Defendant's violations were willful because it knew, or reasonably should have known, that it was failing to comply with the above-described requirements of GIPA." [22-1] at 42. Henry alleges

18

that AbbVie intentionally requests family medical history information during the hiring process, and AbbVie knew or should have known about its obligations under GIPA yet still knowingly requested protected information. This is enough to allege state of mind at the motion to dismiss stage. *See also* Fed. R. Civ. P. 9(b) (intent and knowledge may be alleged generally). Defendant's motion to dismiss is denied.

## IV. Conclusion

Defendant's motion to dismiss, [17], is denied, and defendant shall answer the complaint by October 15, 2024. Plaintiff's motion to remand or, in the alternative, conduct jurisdictional discovery, [25], is also denied. The parties shall meet and confer to discuss a discovery schedule, including any class-related discovery, and file a status report with a proposed case schedule by October 15, 2024. If Henry develops evidence that Illinois citizens comprise between one-third to two-thirds or more than two-thirds of his proposed class, he may try again to invoke the exceptions to federal jurisdiction.

ENTER:

　　　　　　　　　　　　　　　　　　　　Manish S. Shah
　　　　　　　　　　　　　　　　　　　　United States District Judge

Date: September 24, 2024